UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
TORAY PLASTICS (AMERICA), INC., )
                                )
          Plaintiff,            )
                                )
     v.                         )   C.A. No. WES 18-672
                                )
MATTHEW B. PAKNIS,              )
                                )
          Defendant.            )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

Before the Court are cross-motions for summary judgment filed by Plaintiff, Toray Plastics (America), Inc. ("Toray") and Defendant, Matthew B. Paknis ("Paknis"). After careful review, for the reasons below, the Court DENIES Toray's motion, ECF No. 41, and GRANTS in part and DENIES in part Paknis's motion, ECF No. 39.

I.   BACKGROUND

For more than thirty years, Paknis has operated a consulting business focused on management and leadership training. Def. Matthew B. Paknis' Statement of Material Facts in Supp. of Mot. for Summ. J. Pursuant to L.R. 56(a) ("Def.'s SUF") ¶¶ 3-4, 15, ECF No. 40; Pl. Toray Plastics (America), Inc.'s LR 56(a) Statement of Undisputed Material Facts in Supp. of its Cross-Mot. for Summ. J.

("Pl.'s SUF") ¶ 6, ECF No. 41-2.  As part of his business, Paknis developed a "Practice of Management Certificate Program" for Brown University in 1994, which ran for more than a decade.  Def.'s SUF ¶ 3.  In 2005, Toray, an international manufacturing company based in Japan with hundreds of plants worldwide, engaged Paknis to develop a three-day seminar for its entry-level managers and supervisors, which he delivered until 2015.  Id. ¶ 4.  Paknis also consulted for "hundreds of other institutional clients" during that time.  Id.

In October 2016, Toray hired Paknis to work full-time in its Human Resources Department.  Id. ¶ 5.  A few months later, issues arose between Paknis and Toray management.  Pl.'s SUF ¶¶ 9-22.  At one point, Paknis was placed on administrative leave and offered the opportunity to resign or remain with the company.  Id. ¶¶ 22, 25.  While he elected to stay, his return was short lived, as Toray terminated his employment only months later in September 2017.  Def.'s SUF ¶ 6.

Paknis and Toray participated in mediation in June 2018 to resolve any potential claims arising from Paknis's termination.  Id. ¶ 7; Pl.'s SUF ¶ 51.  At that time, Toray learned that Paknis had signed an agreement during his leave to write and publish a book entitled, "Successful Leaders Aren't Bullies" ("the Book").  Def.'s SUF ¶ 7; Pl.'s SUF ¶¶ 40, 53, 56.  The parties executed a settlement agreement releasing each from liability and included,

as part of the agreement, a non-disparagement clause, which also specifically addressed the Book. Pl.'s SUF ¶ 56; Def.'s SUF ¶ 9. In full, the non-disparagement clause provides:

> Paknis agrees not to make any statements, oral or written, publicly or in private, via Social Media or otherwise, which reasonably could be construed to be derogatory or disparaging to Toray, or which reasonably could be anticipated to be damaging or injurious to Toray's reputation or good will or to the reputation or good will of any person associated with Toray or which is reasonably foreseeable as harming Toray's business interests, discloses confidential information gained during his employment, or impacts negatively on Toray's business reputation or its reputation in the community. Paknis, who is believed to be authoring a book titled, "Successful Leaders Aren't Bullies" (or some similar title) shall not make any statements in the aforementioned book or any other publications which reasonably could be construed to be derogatory or disparaging to Toray. Notwithstanding the foregoing, Paknis is prohibited from making any reference to Toray in any documents or communications related to any current or future business venture, regardless of whether the business venture is a not for profit or a for profit endeavor.

Pl.'s SUF ¶ 56; Def.'s SUF ¶ 9; see Pl.'s Ex. 14 ("Severance Agreement") ¶ 8, ECF No. 43.  The agreement also included a provision in which Paknis agreed to pay Toray $55,000 for each violation of the non-disparagement clause.[1]  Pl.'s SUF ¶ 57; Severance Agreement ¶ 9.

---

[1] That provision reads, in full:

> Paknis further understands and agrees that any violation of Paragraph 8 may cause Toray irreparable harm which may be difficult to value or compensate by money damages. Accordingly, in addition to other rights available to Toray, Paknis agrees that in the event of any violation

Paknis's book was released for sale on September 25, 2018. Def.'s SUF ¶ 19.  In it, Paknis writes about dysfunctional corporate cultures and environments, describing examples of workplace bullying taken from his decades-long career as a consultant.  Id. ¶¶ 1, 15.  According to Paknis, the examples in the Book represent compilations of his experience, with details from different companies blended together to remove identifiable information.  Id. ¶¶ 15-16.  Toray asserts that several current and former employees believed the Book to contain information about the company.  Pl.'s SUF ¶¶ 76, 90, 106.

On December 12, 2018, Toray filed this action against Paknis for breach of contract, unjust enrichment, and defamation.  See Compl. ¶¶ 19-32, ECF No. 1.  In its Complaint, Toray alleges that Paknis made disparaging and defamatory comments about it in the Book.  Id. ¶¶ 12, 21, 30.  It also asserts that Paknis "has wrongfully benefited" from sales of the Book.  Id. ¶ 24.  Both parties filed motions for summary judgment on all claims.

---

of Paragraph 8, Toray will also be entitled to liquidated damages in the amount of FIFTY-FIVE THOUSAND DOLLARS 00/100 ($55,000.00) for each violation. Paknis further agrees that this sum is intended as liquidated damages and not as a penalty, and that nothing in this provision shall be construed to limit Toray's ability to seek appropriate injunctive relief and to invoke and pursue any other rights and remedies of any kind it may have arising from such violation.

Severance Agreement ¶ 9.

II.  LEGAL STANDARD

"Summary judgment is proper when the pleadings, discovery, and affidavits, show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Grossman v. Martin, 566 F. Supp. 3d 136, 142 (D.R.I. 2021) (quoting Fed. R. Civ. P. 56).  When reviewing cross-motions for summary judgment, the Court "consider[s] each motion separately, drawing all inferences in favor of each non-moving party in turn."  AJC Intern., Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015) (quoting D & H Therapy Assocs., LLC v. Bos. Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011)).  The Court "must decide whether either of the parties deserves judgment as a matter of law on facts that are not disputed."  Dahua Technology USA Inc. v. Feng Zhang, 988 F.3d 531, 539 (1st Cir. 2021) (quoting Fidelity Co-op. Bank v. Nova Cas. Co., 726 F.3d 31, 36 (1st Cir. 2013)).

III. ANALYSIS

A. Breach of Contract

Toray argues that it is entitled to judgment on Count I based on fourteen separate statements in the Book that violate the non-disparagement clause.  Pl. Toray Plastics (America) Inc.'s Mem. Law in Supp. Cross-Mot. Summ. J. and Opp'n Def. Matthew B. Paknis's Mot. Summ. J. ("Pl.'s Mem.") 17, ECF No. 41-1.  Toray contends that Paknis's breach is clear, even though the Book does not name

Toray or its employees directly.  Id. at 18; Pl. Toray Plastics (America) Inc.'s Sur-Reply to Def. Matthew B. Paknis's Reply in Supp. of  Mot. Summ. J. and Reply to Def.'s Opp'n to Pl.'s Cross-Mot. Summ. J. ("Pl.'s Sur-Reply") 4-5, ECF No. 46.  To support its argument, Toray attempts to connect, mainly through deposition testimony, each of the fourteen Book statements with facts about Toray's business operations, leadership team, and the like.  See Ex. C to Aff. Of Eric Mack ("Statement Chart"), ECF No. 41-3. Toray also asserts that Paknis included its name in an early draft of the Book and that at least two former employees testified that they believed that the Book was based, in part, on events and discussions at Toray.  Pl.'s Mem. 18.  It seeks damages of $770,000 ($55,000 per violation), in accordance with a liquidated damages clause contained within the Severance Agreement.  See Severance Agreement ¶ 9.

     Paknis, on the other hand, argues that he is entitled to judgment on Toray's breach of contract claims because the Book "does not contain any statements about Toray," and lacks any reference by name to Toray or its employees.  Def. Matthew B. Paknis' Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") 22, ECF No. 39-1.  He argues that there is no way a reader could reasonably construe those statements in the Book to be about Toray because the Book has been scrubbed of any identifying information and the facts of several events have been blended to anonymize the Book

6

examples. Def. Matthew B. Paknis' Reply Supp. Mot. Summ. J. and Opp'n Pl.'s Cross-Mot. Summ. J. ("Def.'s Reply") 3, 7-9, ECF No. 44.

The language of the non-disparagement clause is clear and unambiguous. A breach occurs if Paknis made statements which "reasonably could be construed to be derogatory or disparaging to Toray."[2] Severance Agreement ¶ 8. Thus, while it is perhaps unnecessary that a reader with no knowledge of Toray or its operations recognize the company, there must be some identifiable connection between the statement and the company; or, in other words, it must be reasonable to construe the statement to be about Toray. On this point, the Court finds that there are genuine issues of material fact which preclude summary judgment for either party.

It is undisputed that the Book does not identify Toray or its employees by name. See Pl.'s Mem. 18; Def.'s Mem. 22. But a breach may still occur if the reference in the Book is clear enough that a reader could reasonably construe the passage to be about Toray. See Shire LLC v. Mickle, No. 7:10-cv-00434, 2011 WL 871197,

---

[2] The term "disparage" means "[t]o speak slightingly of" or to "criticize (someone or something) in a way showing that one considers the subject of discussion neither good nor important." Black's Law Dictionary (11th ed. 2019). This term is not otherwise defined in the Agreement. See generally Severance Agreement. Paknis does not argue that the language in the Book could not be reasonably construed as disparaging to the entity discussed.

at *4 (W.D. Va. Mar. 10, 2011) (suggesting that an "overt[] refer[ence]" to subject could constitute a breach of a non-disparagement clause where subject was not specifically named). For most statements, Toray offers testimony from a high-level executive at the company or from Paknis himself to connect certain Book details with real world circumstances. See generally Statement Chart. But according to Paknis, the examples in the Book represent "a compilation of true cases that have been blended together that makes an untrue case," and many examples could have referred to more than one company, including or not including Toray. Paknis Dep. 68:6-7, 91:9-16, ECF No. 39-13. This dispute about whether Paknis referred to Toray in the Book such that a reader could reasonably construe the statements as disparaging to the company is better suited for resolution by a factfinder at trial. See JetPay Merchant Servs., LLC v. Tepoorten, No. 3:08-CV-1380-L, 2009 WL 3047730, at *5 (N.D. Tex. Sept. 23, 2009) ("The court is reticent to find a breach when a factual dispute exists as to whom [defendant's] email actually referenced, notwithstanding that [another party] may have understood the e-mail to reference [plaintiff].")

Before moving on to the remaining claims, the Court pauses to note that even if Toray succeeds on its claim for breach of contract, serious questions remain regarding the enforceability of the liquidated damages clause, which forms the basis for Toray's

$770,000 damage request.   "A liquidated damages clause is enforceable when 'the harm caused by the breach is difficult to estimate and when the amount fixed as liquidated damages is a reasonable forecast of the actual harm." ADP Marshall, Inc. v. Noresco, LLC, 710 F. Supp. 2d 197, 234 (D.R.I. 2010) (quoting Howarth v. Feeney, 1992 WL 813502, at *3 (R.I. Super. Jan. 15, 1992)).   "In the event actual damages cannot be reasonably established, a fair liquidated damages provision is valid[,]" but only if "the amount specified . . . 'approximate[s] actual loss or loss anticipated at the time the contract was executed.'"  Id. (quoting Space Monster Int'l, Inc. v. City of Worcester, 940 F.2d 16, 17 (1st Cir. 1991)).   But "[t]he purpose of a liquidated damages provision is to compensate for loss, not to exact punishment for breach."  Id.   Thus, "[i]f no loss has been sustained as a result of the breach, a liquidated damages provision may amount to an unenforceable penalty."[3]  Id.

Paknis claims that Toray's "actual damages . . . are none."[4] Def.'s Reply 6 n.6.  Toray puts forth some evidence in the record

---

[3] Determination of the enforceability of a liquidated damages clause is a question of law, but one that "depends significantly on the facts of the case[.]" Bose Corp. v. Ejaz, 732 F.3d 17, 24, 24 n.5 (1st Cir. 2013).  The party challenging the enforceability of the liquidated damages clause bears the burden of proof. Honey Dew Assocs. v. M&K Food Corp., 241 F.3d 23, 27 (1st Cir. 2001).

[4] Paknis first makes this argument with respect to Toray's defamation claim.  Def.'s Mem. 24-25.  In his reply, he also states that Toray's lack of damages renders the liquidated damages clause

showing that at least two employees read the Book and believed certain passages referred to company.  See Pl.'s SUF ¶¶ 89-90, 101-02.  At one point in its briefing, Toray suggests that one of those employees could have developed a negative perception of a company executive partly because of the Book.  Pl.'s Mem. at 15 n.15.  Otherwise, Toray has not pointed to any specific examples of harm stemming from the publication of the Book.  For example, there is no evidence in this summary judgment record suggesting that Toray lost profits, suffered reputational harm with clients or in the general business community, or lost employees as a result of the Book.  See Gallo Dep. 13:7-10, ECF No. 39-14 (noting that he was fired); Cahill Dep. 34:18-25, ECF No. 39-15 (stating that he left the company over frustration and management practices).  To be sure, and in line with the reason for such clauses, Toray's injury here is likely difficult to quantify.  See ADP Marshall, Inc., 710 F. Supp. 2d at 234.  But it is also plausible that a jury will find that Toray has suffered no damages resulting from the publication of the Book, and in that case, the liquidated damages clause may well be unenforceable as a matter of law.  See id. at 234-35 ("If no loss has been sustained as a result of the breach, a liquidated damages provision may amount to an unenforceable penalty") and cases cited.

---

unenforceable.  Def.'s Reply 6 n.6.

Accordingly, both motions for summary judgment are DENIED as to the breach of contract claims.

B. Unjust Enrichment

In Count II of its Complaint, Toray asserts a claim for unjust enrichment.  In its Motion, Toray seeks profits earned through the sale of the Book and repayment of the salary Paknis earned from the day he signed the publishing agreement through his termination. Pl.'s Mem. 22.   Paknis argues that Toray's claim for unjust enrichment is "completely derivative" of its breach of contract claim, and therefore fails.  Def.'s Mem. 21 n.19.

To prevail on a claim for unjust enrichment in Rhode Island, plaintiff must show "(1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances that it would be inequitable for the recipient to retain the benefit without paying the value thereof."  South County Post & Beam, Inc. v. McMahon, 116 A.3d 204, 210-11 (R.I. 2015).   The allegations in Toray's Complaint read as if they are dependent on the breach of contract claim. See Compl. ¶¶ 23-27.  Specifically, Toray alleges that the benefits and enrichment Paknis received from the book are wrongful, id. ¶ 24, and unjust, id. ¶ 26, precisely because they are derived from selling a book which violated the Settlement Agreement.  Where a claim hinges on a disputed contractual provision, unjust

11

enrichment is typically unavailable.  See Hasbro, Inc. v. Mikohn Gaming Corp., 491 F. Supp. 2d 256, 264 (R.I. 2007); see High Rock Westminster Street LLC v. Bank of Am., N.A., C.A. No. 13-500 S, 2014 WL 3867699, at * 2 (D.R.I. Aug. 6, 2014) (quoting Tantara Co. v. Bay St. Neighborhood Ass'n, LLC, C.A. No. NC-11-55, 2012 WL 4848704, at *3 (R.I. Super. Ct. Oct. 4, 2012)) ("Normally, unjust enrichment claims are precluded 'where a valid contract governs the subject matter.'").

Toray argues that it is entitled to Paknis's salary between the time he signed the publishing agreement and his termination, along with any profits Paknis has earned through book sales.  Pl.'s Mem. 21.  But, Toray's Complaint contains no mention of his salary and no suggestion that its unjust enrichment claim could be based on anything other than benefits relating to the Book sales. See Compl. ¶¶ 24-27.  Moreover, the cases cited in support of Toray's request for repayment of Paknis's salary concern different claims than the ones brought here, and Toray cites no Rhode Island caselaw for support.[5]  See Pl.'s Mem. at 21-23.  Nor does Toray identify a

---

[5] Toray's supporting cases as to its ability to recover Paknis's salary relate to civil enforcement actions brought by the Securities and Exchange Commission, see S.E.C. v. Merchant Capital, LLC, 486 Fed. Appx. 93, 96 (11th Cir. 2012), breach of the duty of loyalty, see Kaye v. Rosefielde, 121 A.3d 862, 870 (N.J. 2015), and breach of fiduciary duty, Serv. Employees Int'l union, Local 250 v. Colcord, 160 Cal. App. 4th 362, 371 (Cal. App. 2008).  Toray cannot bring an S.E.C. enforcement action against Paknis and it has not alleged any claims relating to breaches of the duty of loyalty or fiduciary duty.  See generally Compl.

benefit it granted to Paknis relating to his Book sales.  And even if it had, Toray provides no evidence of Book profits to support its claim.  See Restatement (Third) Restitution § 51(5)(d) ("A claimant who seeks disgorgement of profit has the burden of producing evidence permitting at least a reasonable approximation of the amount of the wrongful gain.").  The Court therefore DENIES Toray's Motion for Summary Judgment and GRANTS Paknis's Motion for Summary Judgment as to Count II.

C. Defamation

Toray contends that Paknis defamed it through the same fourteen statements in the Book and also in a May 2018 email exchange with a former Toray employee.  Pl.'s Mem. 20.  "To prevail in a defamation action, a plaintiff must prove: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) damages, unless the statement is actionable irrespective of special harm."  Burke v. Gregg, 55 A.3d 212, 218 (R.I. 2012) (quoting Marcil v. Kells, 936 A.2d 208, 212 (R.I. 2007)).  Generally, "whether a particular communication is defamatory or not is a question of law for the court."  Id.  "The suspect verbiage is to be construed in its plain and ordinary sense and presumed to have been used in its ordinary import in the community in which it is uttered or published."  Id. (quoting Marcil, 936 A.2d at 213).  "[T]he decisive question is

13

what the person or persons to whom the communication was published reasonably understood as the meaning intended to be expressed." Marcil, 936 A.2d at 213.  Statements are considered in "totality from the point of view of an ordinary reader."  Burke, 55 A.3d at 219.

1. Book Statements

Paknis argues that Count III fails because Toray cannot prove that he made any false or defamatory statement concerning the company.  Def.'s Mem. 24.  More specifically, Paknis contends (1) that Toray fails to show that the statements are false, (2) the statements are opinion protected by the First Amendment, and (3) that there has been no showing of actual damage.  Def.'s Reply 10-13.  In response, Toray argues that "[t]here can be no question that the statements . . . are defamatory."  Pl.'s Mem. 20. It says it has proven its claim if a single person understands the statement to refer to Toray.  Id. at 21 n.19; Pl.'s Reply 9.

To satisfy the first element, "a plaintiff must show that the statement is false and malicious, imputing conduct which injuriously affects a man['s] reputation, or which tends to degrade him in society or bring him into public hatred and contempt." Burke, 55 A.3d at 218 (alteration in original) (quoting Marcil, 936 A.2d at 212). When analyzing this element, the Rhode Island Supreme Court has commented that the "plaintiff in a defamation action carries a substantial burden" and that "cases holding that

14

a particular comment is defamatory are few and far between[.]"
Id. at 219-20 (quoting Alves v. Hometown Newspapers, Inc., 857
A.2d 743, 750 (R.I. 2004)).  "A business entity is not defamed by
communications that may be defamatory to its officers and agents
unless the communication also reflects discredit on the method by
which the entity itself conducts business."  Sequin, LLC v. Renk,
C.A. No. 20-62 WES, 2021 WL 124250, at *8 (D.R.I. Jan. 13, 2021),
report and recommendation adopted, 2021 WL 391519 (D.R.I. Feb. 4,
2021).

Further, opinion statements "are First Amendment protected,"
unless they "imply false assertion[s] of fact."  Pan Am. Sys.,
Inc. v. Atlantic Northeast Rails and Ports, Inc., 804 F.3d 59, 65
(1st Cir. 2015)(internal quotation marks omitted); Cullen v.
Auclair, 809 A.2d 1007, 1110 (R.I. 2002) ("If the statement is an
opinion based on disclosed non-defamatory facts it must be afforded
the highest form of protection under the First Amendment . . .
."). And, "even a provably false statement is not actionable if
'it is plain that the speaker is expressing a subjective view, an
interpretation, a theory, conjecture, or surmise, rather than
claiming to be in possession of objectively verifiable facts . .
. ." Riley v. Harr, 292 F.3d 282, 289 (1st Cir. 2002).

Many passages here refer to "bully" managers or bullying
culture, see, e.g., Statement Chart ¶¶ 1, 8, and such statements
would tend to "express the speaker's subjective views (rather than

15

implying that he possesses objectively testable facts).” Pan Am. Sys., Inc., 804 F.3d at 65; see Edwards v. Schwartz, 378 F. Supp. 3d 468, 517 (W.D. Va. 2019) (finding that “a charge of bullying is an intrinsically relative statement” depending on viewpoint and perspective); Ayyadurai v. Floor64, Inc., 270 F. Supp. 3d 343, 358 (D. Mass. 2017) (“[D]efamatory statements are not punishable unless they are capable of being proved true or false.”) (quoting Pan Am. Sys., Inc., 804 F.3d at 65).   Others contain factual assertions that simply could not be construed as injurious to Toray’s reputation, even if false and about the company. Statements 1, 9, and 10 fall into two these categories.[6]   See Statement Chart ¶¶ 1, 9, 10.   Thus, those statements are not actionable.

The remaining statements at issue still generally express the author’s view of bullying and examples of such activity in the

---

[6] For example, the general gist of Statement 1 is that the company to which Paknis refers did not use objective metrics to measure employees’ performance. See Ex. C to Aff. of Eric Mack ¶ 1 (“Statement Chart”), ECF No. 41-3.   At most, this statement implies that a bully does not like to be objective. Id.   Such language does not rise to the level of a defamatory statement, and much of it constitutes opinion. Additionally, Statements 9 and 10 describe conversations Paknis had with employees of a company at which he worked. See Statement Chart ¶¶ 9, 10.   In the first of these two statements, Paknis states that he was hired to address “dysfunction” and “management issues.” Id. ¶ 9.   In the second, Paknis describes a situation where he learned about a workplace shooting concern that he was then required to report. Id. ¶ 10. There is nothing in either of these statements which could be considered so malicious as to be injurious to the company which Paknis refers, or even executives in that company. Id.

workplace, but also contain certain underlying factual assertions which, if false and concerning Toray, <u>could</u> be capable of defamatory meaning. For example, some passages refer to "flagrant" safety violations, increased physical accidents, intentional destruction of company equipment to undermine other employees, and illegal behavior by managers or executives of a certain company. <u>See</u> Statement Chart ¶¶ 3, 5, 6, 7, 8, 14. Others suggest that executives of the company collude with or turn a blind eye to troubling behavior by a particular manager, or that employees suffer retaliation (including dismissal) if such behavior is reported. <u>Id.</u> ¶¶ 2, 4, 7, 8, 11, 12, 13.

For this latter group, there are material issues of fact as to two critical elements: (1) falsity[7]; and (2) whether the

---

[7] Toray argues that the Court may presume falsity in this context. It is true that historically, courts recognized a common law presumption of falsity, requiring a defendant to "bear the burden of proving truth." <u>Phil. Newspapers, Inc. v. Hepps</u>, 475 U.S. 767, 776 (1986). But "[t]he first amendment 'overlays' state defamation law," <u>RainSoft v.MacFarland</u>, 350 F. Supp. 3d 49, 57 (D.R.I. 2018), and this common law principle has been narrowed significantly. For example, public-figure plaintiffs and private plaintiffs asserting defamation claims involving matters of public concern against media defendants "shoulder the burden of showing that comments are false." <u>Pan Am. Sys., Inc. v. Atl. Ne. Rails and Ports, Inc.</u>, 804 F.3d 59, 66 (1st. Cir. 2015); <u>Phil. Newspapers, Inc.</u>, 475 U.S. at 776. But the Supreme Court has expressly left open the question of whether the common law presumption still applies to private figures bringing claims concerning private speech. <u>See Phil. Newspapers, Inc.</u>, 475 U.S. at 779 n.4 ("We also have no occasion to consider the quantity of proof of falsity that a private-figure plaintiff must present to recover damages. Nor need we consider what standards would apply if the plaintiff sues a nonmedia defendant[.]"). In any event,

ordinary reader understands the statements to "concern"[8] Toray. Consequently, these questions are for a jury to decide.  See Healey v. New Engl. Newspapers, Inc., 520 A.2d 147, 150 (R.I. 1987) ("[W]hereas the threshold determination of whether a statement is capable of bearing a defamatory meaning is for the court to decide, the ultimate conclusion on whether such meaning was indeed conveyed is for the jury to decide.").

Paknis has also challenged the viability of Toray's defamation claim because it has not put forth evidence of harm resulting from the publication of those Book statements.  As discussed earlier, the record shows that some employees of Toray read the Book and believed certain passages could have referred to the company.  See Pl.'s SUF ¶¶ 76, 90, 102.  While evidence in the record on purported damages perhaps barely scrapes by a summary

---

Toray has pointed to evidence in this summary judgment record demonstrating, at the very least, the partial truth of these statements.  See Statement Chart.  Because the Court cannot say that there are no genuine issues of material fact as to this question, this is an issue for trial.  At that time, the parties may raise arguments about whether a jury should be instructed about this presumption.

[8] Under Rhode Island law, "[t]o satisfy the 'of and concerning' element, it suffices that the statements at issue lead the listener to conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never named or misnamed.'" Budget Termite & Pest Control, Inc. v. Bousquet, 811 A.2d 1169, 1172 (R.I. 2002) (quoting Couixland Properties Ltd. P'ship v Cocoran, 174 F.3d 213, 216 (D.C. Cir. 1999)).  This question involves similar factual questions as those underpinning the breach of contract claims, and are better left to the fact finder at trial.

judgment challenge, whether this evidence amounts to harm to Toray's reputation is another question better suited for a fact finder.

Accordingly, summary judgment on Toray's defamation claim relating to Book statements 2-8, 11, 12, 13, and 14 is DENIED as to both parties.  Paknis's Motion is GRANTED to the extent it relates to Book statements 1, 9, and 10.

2. May 25, 2018 Email to Carroll

Toray also contends it is entitled to judgment as a matter of law on its defamation claim relating to a May 25, 2018 email communication that Paknis sent to another former Toray employee, Arron Carroll.  The email had a letter attachment that Paknis suggested he planned to send to the Providence Journal.  Pl.'s SUF ¶¶ 59-63.  Toray argues that a certain statement in the letter attachment constitutes defamation <u>per se</u>.  Pl.'s Mem. 20.  Paknis argues that Toray (1) cannot meet its defamation <u>per se</u> burden for statements in the email or letter attachment; (2) has failed to prove harm; (3) cannot show that the letter was ever published or that Carroll opened the letter; and (4) has not denied any of the factual assertions in the letter.  Def.'s Reply 12-13.

The critical statement in the letter attachment relates to applications Toray submitted to state and federal agencies seeking government funding.  Pl.'s SUF ¶ 63.  In the letter attachment,

Paknis charges, in pertinent part, that "[t]hese applications intentionally mislead and falsify data, depicting Toray as a much finer employer than reality." Id. If false, the assertion that Toray submits applications for funding with intentionally misleading or falsified data certainly falls within the defamation per se scope because it "charges improper conduct, lack of skill, or integrity in [Toray's] profession or business." Marcil, 936 A.2d at 213; see also Nassa v. Hook-SuperRx, Inc., 790 A.2d 368, 374 (R.I. 2002) (finding statements to be per se actionable because they "disparaged [the plaintiff's] reputation for honesty in his business dealings"). In such an action, "a plaintiff can establish liability without a showing of special or pecuniary damages because those damages are presumed." Nassa, 790 A.2d at 374.

The Court concludes that Toray's defamation claim as to this email should also be resolved at trial. Toray admits that it has no evidence that the letter was ever published in the Providence Journal. See Pl.'s Mem. 20 n.17. But the record is not clear on whether Carroll opened and read the letter attachment containing the potentially defamatory statement.[9] Toray argues that the Court may apply a presumption in its favor on this element. See Pl.'s Sur-Reply 7 (citing Ball v. Kotter, 723 F.3d 813, 830 (7th Cir.

---

[9] Paknis exchanged emails with Carroll again a few months later, but there does not appear to be a reference to the May letter. Pl.'s SUF ¶ 69-71.

2013)).  However, caselaw in this circuit suggests that such a presumption is not <u>always</u> applied.  <u>See</u> <u>Scottsdale Capital Advisors Corp. v. The Deal, LLC</u>, 887 F.3d 17, 21-22 (1st Cir. 2018) (finding, in the context of analyzing personal jurisdiction for a defamation claim, that plaintiff had not sufficiently demonstrated that an email attachment was opened to satisfy the "publication" element, and that plaintiffs had not "advanced any principle of law that might generate a presumption that the email attachments were opened").[10]  The Court finds the parties' discussion of this element and the presumption to be underdeveloped and, in any event, concludes that the question of publication is trial-worthy.[11]

Furthermore, Paknis suggests that "Toray does not deny any of the statements within the letter that plausibly could qualify as 'factual representations.'"  Def.'s Reply 12.  The parties have not squarely addressed whether the common law presumption of falsity applies in this context, and the Court declines to make that determination now.[12]  Accordingly, as to Paknis' May 25, 2018 Email, the Court DENIES both motions.

_____

[10]  "[C]ircumstantial evidence . . . might be sufficient to raise a presumption" that defamatory material was seen.  <u>See</u> <u>Scottsdale Capital Advisors Corp. v. The Deal, LLC</u>, 887 F.3d 17, 21-22 (1st Cir. 2018).  Or, the parties could present Mr. Carroll's testimony at trial to directly prove this fact one way or another.
[11]  At trial, the parties may, if they wish, brief whether an instruction on such a presumption is proper.
[12]  "[T]he First Amendment requires that a party who sues over statements regarding issues of public concern prove 'that the statements at issue are not substantially true,' that is, are

IV.   CONCLUSION

For the reasons discussed in this Memorandum and Order, Plaintiff Toray Plastics (America) Inc.'s Motion for Summary Judgment, ECF No. 41, is DENIED, and Defendant Matthew Paknis's Motion for Summary Judgment, ECF No. 39, is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

_WEsmith_
_____
William E. Smith
District Judge
Date: August 16, 2022

---

'materially false.'" <u>RainSoft v. MacFarland</u>, 350 F. Supp. 3d 49, 59 (D.R.I. 2018) (quoting <u>Pan Am. Sys., Inc.</u>, 350 F. Supp. 3d at 66). "To qualify as a matter of public concern, the speech (based on the content, form, and context) must touch on issues in which the public (even a small slice of public) might be interested, as distinct, say, from purely personal squabbles." <u>Pan Am. Sys., Inc.</u>, 804 F.3d at 66. While in its Sur-Reply Toray expressly contends that nothing in the Book could be viewed as a matter of public concern, it does not address whether the contents of the email would so qualify. <u>See</u> Pl.'s Sur-Reply 6 n.6. Paknis does not address this point in his briefing.